**Samario Anthony**, on behalf of
himself and all others      :
similarly situated,
9114 Edmonston Court
Apt. 301
Greenbelt MD 20770

                                                     Civil Action No.

                    Plaintiff,

v.

                                      **JURY TRIAL DEMANDED**

**Bank-Fund Staff Federal Credit Union**,
1725 I St NW,
Suite 150
Washington, DC 20006

                    Defendant.

_____

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff, Samario Anthony, by counsel, and for his Class Action Complaint against the Defendant, he alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action on behalf of himself and classes of all similarly situated consumers against Bank-Fund Staff Federal Credit Union ("BFSFCU"), arising from (a) its routine practice of assessing more than one fee, whether an overdraft fee ("OD Fee") or insufficient funds fee ("NSF Fee") on the same item; and (b)  its practice of charging OD Fees and NSF Fees on items that did not actually overdraw the account, which is also barred by the contract and is deceptive.

2.      BFSFCU misleadingly and deceptively misrepresents these practices, including in its own account contracts.

3.     This is a civil action seeking monetary damages, restitution, and declaratory and injunctive relief.

4.     As described herein, Defendant's practices violate Washington D.C. consumer protection law, as well as the Defendant's own form contracts.

5.     Defendant's improper scheme to extract funds from accountholders already struggling to make ends meet has victimized Plaintiff and thousands of others.  Unless enjoined, Defendant will continue to engage in this scheme and cause substantial injury to its checking account holders.

## **JURISDICTION**

6.     This Court has original jurisdiction over this putative class action lawsuit pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because the aggregate sum of the claims of the members of each of the putative classes exceeds $5 million, exclusive of interest and costs, because Plaintiff bring this action on behalf of proposed classes that are each comprised of over one hundred members, and because at least one of the members of each of the proposed classes is a citizen of a different state than Defendant. In addition, this Court has original jurisdiction under 28 U.S.C. § 1331 because this case presents a federal question with respect to the Electronic Fund Transfers Act.

7.     Venue is appropriate under 28 U.S.C. § 1391(b) because Defendant resides in this District and is the only Defendant in this action.

## **PARTIES**

8.     Plaintiff Samario Anthony is a citizen of Maryland and resident of Greenbelt, MD. Plaintiff has a personal checking account with BFSFCU, which is governed by a Deposit Agreement.

9.      Defendant BFSFCU is one of the largest credit unions in the District of Columbia. It has over $4 billion in assets and maintains its headquarters in the District of Columbia.

**BACKGROUND FACTS**

**I.      BFSFCU CHARGES TWO OR MORE NSF FEES ON THE SAME ITEM**

10.      As alleged more fully herein, BFSFCU's Deposit Agreement and Fee Schedule allow it to charge a single NSF Fee when an item, including an electronic payment item, is returned for insufficient funds.

11.      In contrast to its Deposit Agreement, however, BFSFCU regularly assesses two or more NSF Fees on the *same* item.

12.      This abusive practice is not universal in the financial services industry.  Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one NSF Fee on the same item when it is reprocessed.  Instead, Chase charges one NSF Fee even if a transaction is resubmitted for payment multiple times.

13.      BFSFCU's Deposit Agreement never discloses this practice. To the contrary, the Credit Union's Deposit Agreement indicates it will only charge a single NSF Fee on an item or per transaction.

**A.  Plaintiff's Experience**

14.      In support of his claims, Plaintiff offers an example of an NSF Fee that should not have been assessed against his checking account. As alleged below, BFSFCU: (a) reprocessed a previously declined transaction; and (b) charged an additional fee upon reprocessing.

15.      On February 11, 2019, Plaintiff attempted to make an electronic payment to Comcast.

16.     BFSFCU rejected payment of that item due to insufficient funds in Plaintiff's account and charged him a $30 NSF Fee for doing so.  Plaintiff does not dispute the initial fee, as it is allowed by BFSFCU's Deposit Agreement.

17.     Unbeknownst to Plaintiff and without his request to BFSFCU to retry the item, however, eight days later, on February 19, 2019, BFSFCU processed the same item yet again, with BFSFCU labeling the transaction a RETRY PYMT on his statements. Again, BFSFCU rejected the item due to insufficient funds and charged Plaintiff *another* $30 NSF Fee.

18.     *In sum, BFSFCU charged Plaintiff $60 in fees to attempt to process a single $125 payment.*

19.     The same pattern also occurred on January 9 and January 17, 2019, with respect to a returned Comcast payment.

20.     Plaintiff understood his Comcast payment to be a single item as is laid out in BFSFCU's contract, capable at most of receiving a single NSF Fee (if BFSFCU returned it) or a single OD Fee (if BFSFCU paid it).

**B. The Imposition of Multiple Fees on a Single Transaction Violates BFSFCU's Express Promises and Representations**

21.     BFSFCU's Deposit Agreement states that a singular NSF Fee can be assessed on checks, ACH debits, and electronic payments.

22.     BFSFCU's Deposit Agreement states that it will charge one insufficient funds fee for an "item" or transaction that is returned due to insufficient funds.

> If an item is presented without sufficient funds in your account to pay it, we will return the item unpaid. The fees are disclosed in the BFSFCU Fee Schedule.

Exhibit A, Deposit Agreement at 17.

23.     Despite containing an extensive "Definitions" section, the word "item" is undefined in the Deposit Agreement.

24.     Moreover, according to the Fee Schedule, at most a <u>single</u> fee will be assessed when an "item" is returned:

Insufficient Funds/Uncollected Funds, each (ACH included) . . . . . . . . . . . . . . . . . . . $30.00

Exhibit B, Fee Schedule.

25.     The same "item" on an account cannot conceivably become a new one each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit them.

26.     There is zero indication anywhere in the Deposit Agreement that the same "item" is eligible to incur multiple fees.

27.     Even if BFSFCU reprocesses an instruction for payment, it is still the same "item." The Credit Union's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

28.     The disclosures described above never discuss a circumstance where BFSFCU may assess multiple fees for a single check or ACH transaction that was returned for insufficient funds and later reprocessed one or more times and returned again.

29.     In sum, BFSFCU promises that one $30 NSF Fee will be assessed per ACH debit or check, and these terms must mean all iterations of the same instruction for payment.  As such, BFSFCU breached the contract when it charged more than one fee per item.

30.     Reasonable consumers understand any given authorization for payment to be one, singular  "item," as those terms are used in BFSFCU's Deposit Agreement.

31.     Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "item," which the Credit Union will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does BFSFCU disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do BFSFCU customers ever agree to such fees.

32.     Customers reasonably understand, based on the language of the Deposit Agreement and BFSFCU's other Deposit Agreement, that the Credit Union's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger NSF Fees. In other words, it is always the same item or transaction.

33.     Banks and credit unions like BFSFCU that employ this abusive practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something Defendant here never did.

34.     For example, First Citizens Bank, a major institution in the Carolinas, engages in the same abusive practice as BFSFCU, but at least expressly states:

> Because we may charge a service fee for an NSF item each time it is presented, **we may charge you more than one service fee for any given item**. All fees are charged during evening posting. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

(emphasis added).

35.     First Hawaiian Bank engages in the same abusive practices as Defendant, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE**

**CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

(emphasis added).

36.     Klein Bank similarly states in its online banking agreement:

[W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.

37.     Central Pacific Bank, a leading bank in Hawai'i, states in its Fee Schedule under the "MULTIPLE NSF FEES" subsection: "Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient ("NSF") funds in your account, may be resubmitted one or more times for payment, and a $32 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds." *Miscellaneous Fee Schedule*, Central Pacific Bank 1 (Feb. 15, 2019), https://www.centralpacificbank.com/PDFs/Miscellaneous-Fee-Schedule.aspx.

38.     BP Credit Union likewise states: "We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item."

39.     BFSFCU provides no such disclosure, and in so doing, deceives its accountholders.

**C.  The Imposition of Multiple Fees on a Single Transaction Breaches BFSFCU's Duty of Good Faith and Fair Dealing**

40.     Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when he are invested with a discretionary power over the other party. In such circumstances, the party with discretion is required to exercise that power and

discretion in good faith. This creates an implied promise to act in accordance with the parties'
reasonable expectations and means that BFSFCU is prohibited from exercising its discretion to
enrich itself and gouge its customers. Indeed, BFSFCU has a duty to honor transaction requests in
a way that is fair to Plaintiff and its other customers and is prohibited from exercising its discretion
to pile on ever greater penalties on the depositor. Here—in the adhesion agreements BFSFCU
foisted on Plaintiff and its other customers—BFSFCU has provided itself numerous discretionary
powers affecting customers' credit union accounts. But instead of exercising that discretion in
good faith and consistent with consumers' reasonable expectations, BFSFCU abuses that
discretion to take money out of consumers' account without their permission and contrary to their
reasonable expectations that he will not be charged multiple fees for the same transaction.

41.     BFSFCU exercises its discretion in its own favor—and to the prejudice of Plaintiff
and its other customers—when it defines "item" in a way that directly leads to more NSF Fees.
Further, BFSFCU abuses the power it has over customers and their credit union accounts and acts
contrary to their reasonable expectations under the Deposit Agreement. This is a breach of the
BFSFCU's implied covenant to engage in fair dealing and act in good faith.

42.     By exercising its discretion in its own favor—and to the prejudice of Plaintiff and
other customers—by charging more than one fee on a single item, BFSFCU breaches the
reasonable expectation of Plaintiff and other customers and in doing so violates the implied
covenant to act in good faith.

43.     It was bad faith and totally outside Plaintiff's reasonable expectations for BFSFCU
to use its discretion to assess two or three fees for a single attempted payment.

44.     When BFSFCU charges multiple fees, BFSFCU uses its discretion to define the
meaning of "item" in an unreasonable way that violates common sense and reasonable consumer

expectations. BFSFCU uses its contractual discretion to set the meaning of those terms to choose a meaning that directly causes more NSF Fees.

II. **FSFCU's Account Documents Promise That It Will Only Charge OD Fees or NSF Fees on Transactions That Actually Overdraw An Account**

45. Plaintiff's checking account with BFSFCU was, at all relevant times, governed by BFSFCU's standardized Account Agreement, the material terms of which are drafted by BFSFCU, amended by BFSFCU from time to time at its convenience and complete discretion, and imposed by BFSFCU on all of its customers.

46. In plain, clear, and simple language, the contract documents discussing OD Fees and NSF Fees promise that BFSFCU will only charge OD Fees or NSF Fees on items which would place the account in the negative.

> In all cases, where an Order is presented against insufficient or uncollected funds, you are responsible for paying a fee as disclosed in our Fee Schedule and you authorize us to deduct it from any account(s) from which you are entitled to withdraw funds.
>
> [ . . . ]
>
> In the event there are insufficient or uncollected funds in your accounts, the check or electronic debit will be returned unpaid and an insufficient or uncollected funds fee will be charged as indicated in our Fee Schedule.

Exhibit A, Deposit Agreement at 6.

47. Contrary to these promises, BFSFCU's uniform policy and practice is to disregard the actual amount of money in the account or whether there is a negative balance and, instead, to assess OD Fees or NSF Fees.

48. Without informing its accountholders, BFSFCU determines whether an account balance is negative by using a calculation that deducts pending debit card items for purposes of assessing OD and NSF Fees. By using this calculation—as opposed to the actual money in an

accountholder's account—to determine whether to assess an OD Fee or NSF Fees, BFSFCU increases the number of OD Fees and NSF Fees it assesses on its accountholders.

49.     This manufactured balance is not the official balance of the account and it is not the balance provided to accountholders in their monthly statements from BFSFCU.  As such, it is reasonable for Plaintiff and accountholders like his to interpret and understand BFSFCU's use of the term "balance" as the official balance in the account i.e. the actual money in the account. Plaintiff and class members could not reasonably have expected that BFSFCU would assess OD Fees or NSF Fees in this manner.

**A. Examples of BFSFCU's Imposition of Fees on Plaintiff**

50.     BFSFCU charged Plaintiff NSF Fees on items that did not overdraw his account.

51.     For example, on April 22, 2019 Plaintiff was assessed a $30 NSF Fee for a $200 withdrawal despite the fact that, according to the bank statement issued by BFSFCU, his account never went negative and always had sufficient funds to cover his transactions.

**B. BFSFCU Abuses Its Discretion By Charging Fees on Transactions that Do Not Overdraw the Account**

52.     To the extent the account documents do not explicitly bar the polices described above, BFSFCU exploits contractual discretion to the detriment of accountholders and breaches good faith and fair dealing when it uses these policies.

53.     For example, it was bad faith and totally outside Plaintiff's reasonable expectations for the credit union to use its discretion to assess NSF Fees for items that did not actually overdraw his account.

54.     Additionally, BFSFCU grants itself discretion to charge—or not to charge—an OD Fee or NSF Fee on a given item. When it charges an OD Fee or an NSF Fee on items that do not

actually overdraw an account, BFSFCU engages in bad faith and contradicts reasonable consumer expectations.

55.     BFSFCU acted in bad faith and outside reasonable consumer expectations when it assessed OD Fees and NSF Fees when there was enough money in accountholders' accounts to cover the items and by using a manufactured account calculation to increase the number of OD Fees or NSF Fees it could assess.

## CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

57.     <u>Description of the Class</u>:  Plaintiff bring this class action on behalf of himself and a class of persons ("the Classes") defined as follows:

> All persons who, during the applicable statute of limitations, were charged multiple fees on the same item on a BFSFCU checking account (the "Multiple Fee Class").

> All persons who, during the applicable statute of limitations, were charged OD Fees or NSF Fees on items that did not overdraw their BFSFCU checking accounts (the "Ledger Balance Class").

58.     Excluded from the Classes are Defendant's officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns.  Also excluded from the Classes are any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

59.     The time period for each of the Classes is the number of years immediately preceding the date on which this Complaint was filed as allowed by the applicable statute of limitations, going forward into the future until such time as BFSFCU remedies the conduct complained of herein.

60.     Numerosity:  The members of the proposed Classes are so numerous that individual joinder of all members is impracticable.  The exact number and identities of the members of the proposed Classes are unknown at this time and can be ascertained only through appropriate discovery.  Plaintiff estimate the number of members in each Class to be in the thousands.

61.     Common Questions of Law and Fact Predominate:  There are many questions of law and fact common to Plaintiff and the Classes, and those questions substantially predominate over any questions that may affect individual Class members.  Common questions of law and fact include whether:

A.      Whether BFSFCU charged more than one insufficient funds fee on the same item;

B.      Whether BFSFCU breached its own contracted by charging multiple fees on the same item;

C.      Whether BFSFCU breached the covenant of good faith and fair dealing by charging multiple fees on the same item;

D.      Whether BFSFCU charged OD Fees or NSF Fees on items that did not overdraw checking accounts;

E.      Whether BFSFCU breached its contract by charging OD Fees or NSF Fees on items that did not overdraw checking accounts;

F.      Whether BFSFCU breached the covenant of good faith and fait dealing by charging OD Fees or NSF Fees on items that did not overdraw checking accounts;

G.      Whether BFSFCU developed and engaged in unlawful practices that mischaracterized or concealed its true NSF or OD Fee practices;

H.      The proper method or methods by which to measure damages; and

I. The declaratory and injunctive relief to which the Classes are entitled.

62. Typicality: Plaintiff' claims are typical of the claims of the members of the Classes. Plaintiff and all members of the Classes have been similarly affected by the actions of Defendant.

63. Adequacy of Representation: Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff have retained counsel with substantial experience in prosecuting complex and consumer class action litigation. Plaintiff and their counsel are committed to vigorously prosecuting this action on behalf of the Classes, and have the financial resources to do so.

64. Superiority of Class Action: Plaintiff and the members of the Classes suffered, and will continue to suffer, harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Classes is impractical. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system, and protects the rights of the Class members.

65. Risk of Inconsistent or Varying Adjudication: Class action treatment is proper, and this action should be maintained as a class action because the risks of separate actions by individual members of the Classes would create a risk of: (a) inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for

BFSFCU as the party opposing the Classes; and/or (b) adjudications with respect to individual Class members would, as a practical matter, be dispositive of the interests of other Class members not party to the adjudication or would substantially impair or impede their ability to protect their interests.

66.     Action Generally Applicable to Class as a Whole:  BFSFCU, as the party opposing the Classes, has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract, Including the Covenant of Good Faith and Fair Dealing**

67.     Plaintiff incorporate by reference the preceding paragraphs.

68.     Plaintiff and BFSFCU have contracted for banking services, as embodied in BFSFCU's account documents and related documentation.

69.     All contracts entered by Plaintiff and the Classes are identical or substantively identical because BFSFCU's form contracts were used uniformly.

70.     BFSFCU has breached the express terms of its own agreements as described herein when it assessed multiple fees on the same item and when it assessed OD Fees and NSF Fees on items that did not overdraw checking accounts.

71.     Under the law of the District of Columbia, good faith is an element of every contract.  All contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of

their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

72.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

73.     BFSFCU abused the discretion it granted to itself when it assessed multiple fees on the same item and when it assessed OD and NSF Fees on items that did not overdraw checking accounts.

74.     In these and other ways Defendant violated good faith and fair dealing.

75.     Defendant willfully engaged in the foregoing conduct for the purpose of (1) gaining unwarranted contractual and legal advantages; and (2) unfairly and unconscionably maximizing revenue from Plaintiff and other members of the Classes.

76.     Plaintiff and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the contracts.

77.     Plaintiff and members of the Classes have sustained damages as a result of Defendant's breaches of the parties' contracts and breaches of contract through violations of the covenant of good faith and fair dealing.

78.     Plaintiff and members of the Classes have no adequate remedy at law.

**SECOND CLAIM FOR RELIEF**
**(Violation of D.C. Code § 28-3904 *et seq*., Consumer Protection Procedures Act)**

79.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

80.     This Count is brought on behalf of the Plaintiff, the Classes and the general public pursuant to the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §28-3901 *et seq.*

81.     As described herein, Defendant engaged, and continues to engage, in deceptive acts and practices in violation of the CPPA.

82.     Defendant is a "person" within the meaning of D.C. Official Code § 28-3901(a)(1), and provides "goods and services" within the meaning of § 28-3901(a)(7).

83.     Plaintiff is a "consumer" within the meaning of D.C. Official Code § 28-3901(a)(2).

84.     D.C. Code § 28-3904 makes it an "unlawful trade practice … whether or not any consumer is in fact misled, deceived or damaged thereby," to, among other things:

- Misrepresent as to a material fact which has a tendency to mislead;

- Fail to state a material fact if such failure tends to mislead; and

- Use innuendo or ambiguity as to a material fact, which has a tendency to mislead.

85.     Defendant violated the CPPA by, *inter alia*, misrepresenting (a) that it would charge only one NSF Fee per item when it assessed multiple fees on the same item and (b) that it would only assess OD Fees and NSF Fees on items that overdrew checking accounts.

86.     As a result of Defendant's conduct as described herein, Plaintiff and the class have been damaged in that they have been charged improper OD and NSF Fees.

87.     In addition to actual damages, Plaintiff and the Class are entitled to statutory and treble damages as authorized by D.C. Code §28-3901 *et seq.*

88.      Plaintiff and the Class members seek declaratory relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, and injunctive relief.

**THIRD CLAIM FOR RELIEF**
**Violation of Electronic Fund Transfers Act (Regulation E)**
**C.F.R. § 1005 et seq. (authority derived from 15 U.S.C. § 1693 *et seq*.))**
**(On Behalf of Plaintiff and the Ledger Balance Class)**

89. The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

90. By charging overdraft fees on ATM and nonrecurring transactions, BFSFCU violated Regulation E (12 C.F.R. §§1005 et seq.), whose "primary objective" is "the protection of consumers" (§1005.l(b)) and which "carries out the purposes of the [Electronic Fund Transfer Act 15 U.S.C. §§1693 et seq.), the "EFTA"] (§1005. l(b)), whose express "primary objective" is also "the provision of individual consumer rights" (15 U.S.C. §1693(b)).

91. Specifically, the charges violated what is known as the "Opt In Rule" of Regulation E (12 C.F.R. § 1005.17.) The Opt In Rule states: "a financial institution ... shall not assess a fee or charge ... pursuant to the institution's overdraft service, unless the institution: (i) [p]rovides the consumer with a notice in writing [the opt-in notice]. . . describing the institution's overdraft service" and (ii) "[p ]rovides a reasonable opportunity for the consumer to affirmatively consent" to enter into the overdraft program. (Id.) The notice "shall be clear and readily understandable." (12 C.F.R. §205.4(a)(l).) To comply with the affirmative consent requirement, a financial institution must provide a segregated description of its overdraft practices that is accurate, non-misleading and truthful and that conforms to 12 C.F.R. § 1005.17 prior to the opt-in, and must provide its customers a reasonable opportunity to opt-in after receiving the description. The affirmative consent must be provided in a way mandated by 12 C.F.R. § 1005.17, and the financial institution must provide confirmation of the opt-in in a manner that conforms to 12 C.F.R. § 1005.17.

92. The intent and purpose of this Opt-In Contract is to "assist customers in understanding how overdraft services provided by their institutions operate .... by explaining the institution's overdraft service ... in a clear and readily understandable way"-as stated in the Official Staff Commentary (74 Fed. Reg. 59033, 59035, 59037, 5940, 5948), which is "the CFPB's official interpretation of its own regulation," "warrants deference from the courts unless 'demonstrably irrational,'" and should therefore be treated as "a definitive interpretation" of Regulation E. *Strubel v. Capital One Bank* (*USA*), 2016 U.S. Dist. LEXIS 41487, *11 (S.D. N.Y. 2016) (quoting *Chase Bank USA v. McCoy*, 562 U.S. 195, 211 (2011)) (so holding for the CFPB's Official Staff Commentary for the Truth In Lending Act's Regulation Z)).

93. BFSFCU failed to comply with Regulation E, 12 C.F.R. § 1005.17, which requires affirmative consent before a financial institution is permitted to assess overdraft fees against customers' accounts through an overdraft program for ATM and non-recurring debit card transactions. BFSFCU has failed to comply with the 12 C.F.R. § 1005.17 opt-in requirements, including failing to provide its customers with a valid description of the overdraft program which meets the strictures of 12 C.F.R. § 1005.17. BFSFCU's opt-in method fails to satisfy 12 C.F.R. § 1005.17 because, inter alia, it states that an overdraft occurs when you "overdraw your account" or where insufficient funds exist to "pay" a given transaction, when in fact BFSFCU assesses overdraft fees when there is enough money in the account to pay for the transaction at issue.

94. As exhibited by the transactions above, Plaintiff's account had funds to cover the transactions, which were paid, yet BFSFCU charged overdraft fees.

95. As a result of violating Regulation E's prohibition against assessing overdraft fees on ATM and non-recurring debit card transactions without obtaining affirmative consent to do so, BFSFCU has harmed Plaintiff and the Class.

Due to BFSFCU's violation of Regulation E (12 C.F.R. § 1005.17), Plaintiff and members of the Class are entitled to actual and statutory damages, as well as attorneys' fees and costs of suit pursuant to 15 U.S.C.A. § 1693m.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on his own behalf and on behalf of the Classes respectfully request that the Court:

(a) Certify this case as a class action pursuant to Rule 23, appointing Plaintiff as class representative and appointing counsel for Plaintiff as lead counsel for the Classes;

(b) Award Plaintiff and the Classes actual, incidental, statutory, consequential, and treble damages in an amount to be proven at trial, including any and all compensatory damages, punitive damages, restitution, any applicable penalties and interest, authorized attorneys' fees, interest, and costs, and any further relief as the Court deems just equitable, and proper;

(c) Declare BFSFCU's practices outlined herein to be unlawful;

(d) Enjoin BFSFCU from engaging in the practices outlined herein; and

(e) Grant Plaintiff and the Classes a trial by jury.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues so triable.


DATED this 16th day of December, 2019.

Respectfully submitted,


/s/ Jeffrey Kaliel
Jeffrey Kaliel (DC Bar No. 983578)
Sophia Gold (DC Bar No. 1044723)

**KALIEL PLLC**
1875 Connecticut Avenue NW, 10th Fl.
Washington, DC 20009
Telephone: (202) 350-4783
Facsimile: (202) 871-8180
jkaliel@kalielpllc.com
sgold@kalielpllc.com

Jeffrey M. Ostrow (*pro hac vice*
forthcoming)
Jonathan M. Streisfeld (*pro hac vice*
forthcoming)
Daniel E. Tropin (*pro hac vice* forthcoming)
**KOPELOWITZ OSTROW
FERGUSON WEISELBERG GILBERT**
1 West Las Olas Boulevard, Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
ostrow@kolawyers.com
streisfeld@kolawyers.com
tropin@kolawyers.com


*Counsel for Plaintiff and the Proposed Plaintiff Class*